IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

NANCY LEWIS,

          Plaintiff,

vs.                                                                                       No. 10-cv-00596 JAP/RLP

MCKINLEY COUNTY BOARD
OF COUNTY COMMISSIONERS,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

On July 27, 2010 Defendant McKinley County Board of County Commissioners (the "County") filed a Motion to Dismiss (Doc. No. 7). Having reviewed the parties arguments as well as the briefs and relevant law, the Court determines that it will grant the County's Motion to Dismiss and will dismiss with prejudice the Complaint for Civil Rights Violations (Doc. No. 1) (Complaint) filed by Plaintiff Nancy Lewis on June 22, 2010.

**BACKGROUND**

On June 22, 2010, Lewis, proceeding pro se, filed a Complaint contending that she had been held in the McKinley County Detention Center (Detention Center) "nine days beyond the [thirty] days federal law allows a prisoner to be held" while awaiting extradition. (Doc. No. 1, p. 1). Lewis also alleges that the County violated her "substantive Due Process rights under the Bill of Rights by maintaining conditions at its [Detention Center] which shock the conscience." (Doc.

1

No. 1, p. 1-2). Thus, Lewis appears to allege two distinct causes of action: a cause of action for Lewis' allegedly unlawful detention and a cause of action for the allegedly poor conditions of confinement at the Detention Center.[1]

According to the attachments to Lewis' Complaint, Lewis was arrested on September 22, 2008 on a warrant issued from Dekalb County, Georgia. On September 24, 2008, a Magistrate Judge in the Magistrate Court of Rio Arriba County, New Mexico ordered Lewis to be extradited to Georgia and Lewis was incarcerated in the Detention Center pending her extradition.  On October 28, 2008, the Dekalb County Sheriff's Office sent a fax to the Detention Center releasing the hold on Lewis and advising that Georgia would not extradite Lewis. According to Lewis, the total length of her incarceration was thirty-nine days.  Lewis contends that 18 U.S.C. §3182 required the County to release her after thirty days if no agent from Georgia appeared to extradite her.  Lewis also contends that Captain John Greene, the individual allegedly responsible for releasing prisoners at the Detention Center, told Lewis that weekends and holidays did not count toward the thirty day period and that she therefore did not have to be released after thirty consecutive days.

In its Motion to Dismiss, the County argues that Lewis failed to state facts that would entitle her to relief under the law and that her Complaint should therefore be dismissed. Specifically, the County argues that Lewis has failed to make any allegations that support holding the municipality liable for the allegedly wrongful acts of its employee, Captain John Greene.  In her Response, Lewis contends that the County can be held liable because it "either

---

[1] Because Lewis appears pro se, the Court liberally construes her pleadings.  *See McBride v. Deer*, 240 F.3d 1287 (10th Cir. 2001).

knew about previous instances of illegal incarceration at [the Detention Center] and chose to turn a blind eye to it or [was] unaware but had failed to provide proper training for [Detention Center] personnel." (Doc. No. 8, p 3). In addition, Lewis contends that "officials in Española Valley are cognizant of the facility's bad reputation." (Doc. No. 8, p.3).

## DISCUSSION

The County moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Lewis' Complaint. Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded allegations as true and views them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). Rule 12(b)(6) requires that the complaint set forth the grounds of plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the complaint does not need to include detailed factual allegations, "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* In other words, dismissal of a complaint under Rule 12(b)(6) is proper only where it is obvious that the plaintiff failed to set forth "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009) (citations omitted).  A plaintiff is

not required to include specific facts in a complaint as long as the complaint "gives the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quotation marks and alteration omitted). With this standard in mind, the Court addresses both causes of action alleged in Lewis' Complaint and concludes that Lewis has failed to state any claim for which relief could be granted.

**Wrongful Detention**

Lewis does not explain how her detention for nine days beyond the thirty day period proscribed in 18 U.S.C. §3182 violates any federally protected right.  Section 3182 provides that if no agent of the state requesting extradition "appears within thirty days from the time of the arrest [of the fugitive], the prisoner *may* be discharged."  (emphasis added).  Thus, while Lewis contends that her rights under §3182 were violated because she was not released thirty days after her arrest, nothing in §3182 indicates that release is mandatory after thirty days or that detaining an individual longer than thirty days constitutes a violation of a federally protected right. *See Lott v. Heyd*, 315 F.2d 350 (5th Cir. 1963) (concluding that even if a prisoner was "held for three days [beyond the thirty day period in §3182] without legal authority, no federally-protected rights were violated"). Rather, the use of the word "may" indicates that release of a prisoner being held for extradition after thirty days is permissive, not mandatory. *See Ellis v. Hargrove*, 75 Fed.Appx. 229, 230 (5th Cir. 2003) (unpublished) (noting that §3182 does not mandate the release of a fugitive after thirty days) and *SBKC Service Corp. v. 1111 Prospect Partners*, 105 F.3d 578, 581-82 (10th Cir. 1997) (noting that the word "may" "is a word universally recognized as connoting permissiveness"). *But see Cortez Byrd Chips, Inc. v. Bill Harbert*, 529 U.S. 193, 198 (2000) (noting that "the mere use of 'may' is not necessarily conclusive of congressional

intent to provide for a permissive or discretionary authority" if legislative intent or inferences of the structure of a statute indicate otherwise).

Assuming, however, that §3182 confers a federally protected right, the County argues that Lewis nevertheless has failed to allege any facts under which the County can be held liable for Captain Greene's allegedly wrongful actions in detaining Lewis for more than thirty days. As the County points out, a governmental entity cannot be held liable under 42 U.S.C. §1983 "for an injury inflicted solely by its employees or agents." *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978). Rather, it is only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983." *Id.* An official policy must be "the moving force behind the injury alleged" and "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a causal link between the municipal action and deprivation of federal rights." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (quotation omitted).

When there is no official policy that itself violates federal law, a municipality may still be held liable for the actions of its employee if the injury caused by the employee is the result of the municipality's failure to provide adequate training. *See id.* However, in these situations "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* (citing *Board of Commissioners v. Brown*, 520 U.S. 397 (1997). A cause of action based on inadequate training therefore "requires proof of the municipality's deliberate indifference to its inhabitants-i.e., the failure to train must

reflect a deliberate or conscious choice by a municipality." *Id*. (quotation marks and alterations omitted).  "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Id.*  While "a single incident generally will not give rise to liability," *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002), "deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action." *Barney*, 143 F.3d at 1307.  Finally, in order "for liability to attach [to a municipality's failure to train,] the identified deficiency in [the municipality's] training program must be closely related to the ultimate injury." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989) abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1994).

    Lewis' Complaint does not allege that a County policy resulted in her allegedly wrongful detention.  Rather, as Lewis clarifies in her Response, her basis for holding the County liable for the allegedly wrongful acts of its employee is that the County "either knew about previous instances of illegal incarceration at [the Detention Center] and chose to turn a blind eye to it or [was] unaware but had failed to provide proper training for [Detention Center] personnel." (Doc. No. 8, p.3) In order to hold the County liable for the acts of its employee, Lewis was required to plead a plausible claim that either the County had "actual or constructive notice that its action or failure to act [was] substantially certain to result in a constitutional violation" and "consciously or deliberately cho[se] to disregard the risk of harm" or that the alleged violation of Lewis' rights was a "highly predictable or plainly obvious consequence of [the County's] action or

6

inaction." *Barney*, 143 F.3d at 1307.

While Lewis appears to argue that there is a pattern of wrongful detention at the Detention Center, Lewis has failed to plead plausible facts that the type of misconduct she alleges Captain Greene engaged in had ever occurred in the past. Although Lewis alleges that she is aware of two other recent cases of "illegal incarceration of women" in the Detention Center, she does not contend that those allegedly illegal incarcerations were the result of a violation of §3182. In addition, Lewis does not contend that the County was aware of or had constructive notice of either of these allegedly illegal incarcerations and that it consciously chose to disregard the risk of harm. Thus, Lewis has not plead a plausible claim under which she could hold the County liable for a pattern of unconstitutional conduct.

To the extent that Lewis' Complaint states a cause of action under Section 1983 for failure to train, Lewis has not plead any facts under which a plausible failure to train claim could be brought. While Lewis alleges that Captain Greene "was obviously ill trained, for he apparently had no check on how long a prisoner had been confined and when he or she was to be released," (Doc. No. 1, p. 3) Lewis has not identified any specific training program regarding the release of prisoners that is allegedly inadequate. *See City of Canton*, 489 U.S. at 391 (noting that "plainly, adequately trained officers occasionally make mistakes; the fact they do says little about the training program or the legal basis for holding the city liable"). Further, Lewis has not plead any facts that suggest the County was aware of the allegedly wrongful conduct, nor has she stated any facts that would indicate that her detention for longer than thirty days was a "highly predictable" or "plainly obvious" consequence of the alleged failure to train such that the County could be held liable for any deliberate indifference to Lewis' constitutional rights. *See Barney*,

143 F.3d at 1307.  Hence, Lewis has failed to plead sufficient facts to state a plausible claim that the County "fail[ed] to train an employee in specific skills needed to handle recurring situations, thus presenting a potential for constitutional violations." *Id.*

Because §3182 does not confer a federally protected right, and because Lewis has not alleged any facts that give rise to a plausible claim under which she could hold the County liable for the allegedly wrongful conduct of Captain Greene, the Court concludes that Lewis has failed to state a claim for which relief can be granted with respect to her detention in the Detention Center for thirty-nine days.

**Conditions of Confinement**

Lewis' Complaint also appears to attempt to state a claim regarding the conditions of confinement at the Detention Center.  Lewis contends that her substantive Due Process rights were violated because the County "maintain[ed] conditions at its [Detention Center] which shock the conscience."   (Doc. No. 1, p. 1) Other than a bare statement in her Complaint that the Detention Center was a "disgusting place," Lewis does not plead any facts in her Complaint to support her assertion that conditions at the Detention Center violated her Due Process rights. However, in a letter written by Lewis that was attached to the Complaint, Lewis makes a number of allegations that describe the conditions at the Detention Center. Lewis states that "there is no daylight, ever" in the dormitory where she was kept, that "it is so filthy [at the Detention Center] that the premises must be frequently sprayed" for bacteria, that there was no privacy in the bathroom, and that the drain in the shower got plugged at some point during her stay at the Detention Center. (Doc. No. 1, p. 12). Lewis also states the food at the Detention Center was unappetizing, that there may have been a maggot in her rice at one point but that she did not

have her glasses on so she could not see for certain what it was, and that she was only allowed to go outside for recreation once or twice a week.  (Doc. No. 1, p. 12)

Lewis' contention that her substantive Due Process rights were violated by the conditions of confinement at the Detention Center is subject to scrutiny under the Eighth Amendment to the United States Constitution and its prohibition of cruel and unusual punishment. *See Adkins v. Rodriguez*, 59 F.3d 1034 (10th Cir. 1995) (noting that claims regarding conditions of confinement are "bounded by the Eighth Amendment" because it is "the explicit textual source of constitutional protection . . . in the prison context") (citation and quotation omitted)). The Eighth Amendment imposes a duty on prison officials and municipalities to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  "Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id.* (quotation marks omitted). In order for a plaintiff to prevail on a claim that the conditions at a detention facility are unconstitutional, "the deprivation alleged must be sufficiently serious" and the "prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* (internal quotation marks omitted).  In addition, prison officials must show "'deliberate indifference' to the existence of any risk inherent in exposure to the challenged conditions" in order to be held liable for inhumane conditions in a detention facility.  *Despain v. Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001).  The "deliberate indifference" standard in a prison conditions case, unlike the "deliberate indifference" standard used to hold a municipality liable for the actions of its employees, is a subjective standard that requires actual knowledge of a risk by a prison official.  *See Barney,* 143 F.3d at 1308 n.5.

In regard to conditions of confinement, Lewis fails to state a claim for which relief can be granted for two reasons. First, none of the allegations in Lewis' Complaint rise to the level of seriousness required under the *Farmer* test. Lewis alleges generally that the Detention Center was "disgusting," that there might have been a maggot in her rice but that she was not sure, that there was no privacy around the toilet in her cell, that she had limited access to the outdoors for recreation, and that the shower flooded in her cell. However, courts have consistently found that conditions such as those alleged by Lewis do not rise to the level of seriousness required for a violation of the Eighth Amendment. In *Barney v. Pulsipher*, for example, the Tenth Circuit Court of Appeals concluded that "a filthy cell, inadequate lighting and ventilation, lack of enclosures around the shower and toilet, unappetizing food, and no access to recreational facilities"[2] did not violate the Eighth Amendment because the "Eighth Amendment does not mandate comfortable prisons, and conditions imposed may be restrictive and even harsh." *Id.* at 1311. *And see Ajaj v. United States*, 293 Fed.Appx. 575 (10th Cir. 2008) (unpublished) (noting that a one-year deprivation of access to outdoor recreation is not sufficiently serious to implicate the Eighth Amendment).

While, as Lewis points out in her response, the length of a prisoner's stay is an important

---

[2] The plaintiffs in *Barney* had alleged specifically that:
The mattress was soiled and torn; the pillow filthy and uncovered by a pillow case; there was no clean place for plaintiffs to place their clothing when they went to bed; the sink, toilet, shower fixtures and soap were dirty; there was profanity scribbled on the walls of the cell; the lighting was inadequate and the air in the cell during the summer months when the plaintiffs were confined there, was stifling due to the lack of any adequate circulation, ventilation, or air conditioning in the cell, and the food was cold and unappetizing.

*Barney*, 143 F.3d at 1304.

10

factor in determining whether conditions of confinement meet constitutional standards, none of the conditions pled in Lewis' complaint "result in the denial of the minimal civilized measure of life's necessities," *Farmer*, 511 U.S. at 832, even considering the fact that she was detained for approximately thirty-nine days. *See Barney*, 143 F.3d at 1312 (listing cases where "far worse conditions fail to state a claim because of the brief nature of the incarceration"). As a general rule, "the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quotation marks omitted). Here, accepting all of the allegations in Lewis' Complaint as true, none of the conditions at the Detention Center deprived Lewis "of shelter, food, drinking water, and sanitation" such that Lewis could be said to have been deprived of "the minimal civilized measure of life's necessities" during her thirty-nine day stay at the Detention Center.

Even assuming that the facts alleged in Lewis' Complaint do rise to the level of seriousness required to state a claim for unconstitutional conditions of confinement, the Court determines that Lewis has failed to plead any facts by which the County could be found to have been deliberately indifferent to the conditions at the Detention Center. Lewis has not contended that the County was subjectively aware of the conditions in her cell, nor has Lewis contended that the County was aware of and ignored any risk of harm created by these conditions. Rather, Lewis asserts in her Response only that "officials in the Española Valley are cognizant of the facility's bad reputation." This statement, which is made for the first time in Lewis' Response, is insufficient to plead a plausible claim that the County was subjectively aware of the allegedly

unconstitutional conditions of confinement at the Detention Center. Because Lewis has not plead any facts that rise to the level of seriousness to state a claim for conditions of confinement, and because Lewis has failed to plead any facts that suggest that the County was aware of and ignored any risk of harm posed by the conditions at the Detention Center, Lewis has failed to state a claim regarding the conditions of confinement at the Detention Center for which relief could be granted.

The Court concludes that Lewis has failed to state a claim for which relief can be granted with respect to both of her claims.

IT IS ORDERED that Defendant's Motion to Dismiss (Doc. No. 7) is GRANTED and Plaintiff's Complaint (Doc No. 1) will be DISMISSED with prejudice.

_____
SENIOR UNITED STATES DISTRICT COURT JUDGE